UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAMUEL TYLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-3492 (ABJ) |
| | ) |
| UBER TECHNOLOGIES, INC., *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION & ORDER**

In October of 2019, *pro se* plaintiff Samuel Tyler, who at one time earned money by transporting passengers identified through the Uber App, brought this action against Uber Technologies, Inc. ("Uber") and a customer he refers to as "Rider Grayson." The complaint was amended on December 19, 2019. *See* Am. Compl. [Dkt. # 9]. The gravamen of plaintiff's complaint is that Uber failed to protect him as a driver from sexual harassment by the passenger, and that Uber's termination of his account after the passenger accused him of driving while intoxicated was unlawful. *See generally* Am. Compl. Uber moved to dismiss several of the counts against it on legal grounds, and that motion has been addressed in a separate opinion. This opinion deals with the question of whether plaintiff may press his other claims in federal court, or whether he is required to submit them to arbitration in accordance with the terms of his contractual arrangement with Uber. As will be set forth in more detail below, this Court is bound by D.C. Circuit precedent to enforce the arbitration provision in the contract. The Court has not considered, and this opinion should not be read as expressing any view concerning, the merits of plaintiff's claims or the propriety of Uber's actions.

1

Plaintiff alleges that Grayson falsely accused him of drunk driving after he rebuffed the passenger's sexual overtures.  Am. Compl. at 5.   He alleges that this retaliatory action constituted sexual harassment by Grayson.  Am. Compl. at 5.  Plaintiff also complains that Uber failed to provide him with a safe working environment free of harassment, and he has brought three claims against the company based on its response to Grayson's accusation.  Plaintiff claims that Uber's hasty investigation and termination of his contract based on Grayson's and other riders' complaints amounted to:  discrimination based on his sex and race in violation of Title VII of the Civil Rights Act on 1964; discrimination based on his status as a recovering alcoholic in violation of the Americans with Disabilities Act; and wrongful termination without a proper investigation in violation of D.C. Code § 50-301.29a.  Am. Compl at 1, 5–7, 12–14.

Pending before the Court is Uber's Motion to Compel Arbitration of Plaintiff's Complaint, with the Exception of His Sexual Harassment Claims [Dkt. # 6] ("Def.'s Mot. to Compel").  The company argues that pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4, plaintiff is bound by his Agreements with Raiser, LLC, Uber's wholly owned subsidiary, to arbitrate any claims arising out of his relationship with Uber.  *See* Mem. in Supp. of Mot. to Compel [Dkt. # 6-1] ("Def.'s Mem.") at 1.  For the following reasons, the Court agrees that plaintiff is bound by the arbitration provisions in the Agreements and that all of his claims, with the exception of the sexual harassment claim and the D.C. Code claim, which will be addressed in a separate opinion and order, must be submitted to arbitration for resolution.

## BACKGROUND

Uber is a technology company that connects riders looking for transportation to independent drivers through the Uber smartphone application ("Uber App").  Declaration of

Michael Chan, Attachment 2 to Mot. to Compel [Dkt. # 6-2] ("Chan Decl.") ¶ 3.[1]  Its wholly owned subsidiary, Raiser, LLC ("Raiser") is "engaged in the business of providing lead generation services for independent ridesharing transportation providers."  *Id*. ¶ 4.  When a driver elects to use the Uber App, he must first select a unique username and password, associated with an email account of his choosing.  *Id*. ¶ 7.  Then the driver must "enter[] into an agreement with Uber and/or the applicable Raiser entity."  *Id*. ¶ 8.

A driver is provided with the Agreement through a link on the Uber App that contains documents and contracts that the driver can review.  Chan. Decl. ¶ 9.  A prospective Uber driver is told through the App that "TO GO ONLINE, YOU MUST REVIEW ALL THE DOCUMENTS BELOW AND AGREE TO THE CONTRACTS BELOW."  *Id.*  To advance past the first screen, a potential driver must click "YES, I AGREE" to a statement that says "By clicking below, you represent that you have reviewed all the documents above and that you agree to all the contracts above."  *Id*. (capitalization in original).  Then the driver must confirm for a second time that he has reviewed the documents and agreed to the contracts before being able to access the full Uber App.  *Id*. ¶¶ 9–10. When Uber revises its Agreements, drivers who have signed older versions must complete the same procedure to accept the terms of the new Agreements.  *Id*. ¶ 11.

Plaintiff's Uber account was activated on or around July 8, 2015.  Chan Decl. ¶ 13.  At that time, the applicable Agreement was the November 10, 2014 "Raiser Software License & Online Services Agreement" ("Nov. 2014 Agreement"), which plaintiff accepted on July 9, 2015.  *Id*.  In

---

1   Chan is a Lead Paralegal at Uber who is "familiar with Uber's business model, as well as the operations of Uber's wholly owned subsidiaries, including Raiser, LLC," and has "personal knowledge of the process transportation providers must go through to sign up to use the Uber App and the various documents to which they must assent in order to use the Uber App."  Chan. Decl. ¶¶ 2, 6.

December 2015, Uber updated the Agreement (the "Dec. 2015 Agreement"), which plaintiff accepted on March 10, 2016.  *Id*. ¶ 14.  Both Agreements contained arbitration provisions, and both advised drivers that they could choose not to be bound by the provisions.  *Id*. ¶ 15; *see also* Nov. 2014 Agreement, Ex. C to Chan Decl. [Dkt. # 6-2] at PDF 13, 27, 30–31; Dec. 2015 Agreement, Ex. D to Chan Decl. [Dkt. # 6-2] at PDF 33, 48, 53.  The December 2015 Agreement states:

> **Arbitration is not a mandatory condition of your contractual relationship with the Company. If you do not want to be subject to this Arbitration Provision, you may opt out of this Arbitration Provision by notifying the Company in writing of your desire to opt out of this Arbitration Provision, either by (1) sending, within 30 days of the date this Agreement is executed by you, electronic mail to optout@uber.com, stating your name and intent to opt out of the Arbitration Provision or (2) by sending a letter by U.S. Mail, or by any nationally recognized delivery service (e.g, UPS, Federal Express, etc.), or by hand delivery to:**
>
> > **Legal**
> > **Rasier, LLC**
> > **1455 Market St., Ste. 400**
> > **San Francisco CA 94103**
>
> **In order to be effective, the letter under option (2) must clearly indicate your intent to opt out of this Arbitration Provision, and must be dated and signed. The envelope containing the signed letter must be received (if delivered by hand) or post-marked within 30 days of the date this Agreement is executed by you. Your writing opting out of this Arbitration Provision, whether sent by (1) or (2), will be filed with a copy of this Agreement and maintained by the Company. Should you not opt out of this Arbitration Provision within the 30-day period, you and the Company shall be bound by the terms of this Arbitration Provision. You have the right to consult with counsel of your choice concerning this Arbitration Provision. You understand that you will not be subject to retaliation if you exercise your right to assert claims or opt-out of coverage under this Arbitration Provision.**

Dec. 2015 Agreement at PDF 53 (bold font in original).

Under the heading, "Important Note Regarding this Arbitration Provision," the December 2015 Agreement explains: "Except as provided below, arbitration does not limit or affect the legal claims you may bring against the Company. Agreement to arbitration only affects where any such claims may be brought and how they will be resolved." Dec. 2015 Agreement at PDF 47. The provision emphasizes, though: "IMPORTANT: This Arbitration Provision will require you to resolve any claim that you may have against the Company or Uber on an individual basis, expect as provided below, pursuant to the terms of the Agreement unless you choose to opt out of the Arbitration Provision." *Id*.

The provision concludes:

> This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA") and evidences a transaction involving interstate commerce. This Arbitration Provision applies to any dispute arising out of or related to this Agreement or termination of the Agreement and survives after the Agreement terminates . . . .
>
> **Except as it otherwise provides, this Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before any forum other than arbitration** . . . . **Except as it otherwise provides, this Arbitration Provision requires all such disputes to be resolved only by an arbitrator through final and binding arbitration on an individual basis only and not by way of court or jury trial**[.]

Dec. 2015 Agreement at PDF 49 (bold in original).

On June 3, 2018, Uber notified plaintiff that Grayson, who had been a passenger in plaintiff's vehicle earlier that day, had reported that plaintiff was driving while "clearly drunk." Am. Compl. at 5, 14. According to the complaint, "[p]laintiff immediately responded that the false charge was sexual harassment, and that Rider Grayson 'wanted to play[.]'" Am. Compl. at 5. Plaintiff was informed that day that his Uber account had been placed on hold, and on the next

5

day, Uber "terminated [p]laintiff's account." Am. Compl. at 5–6. On July 27, 2018, Uber informed plaintiff that the incident was "being investigated," and that Uber was "awaiting [Plaintiff's] reply." Am. Compl. at 6 (alteration in original). However, plaintiff alleges that "[b]y then the investigation was closed." Am. Compl. at 6. Between July 27, 2018 and October 17, 2018, plaintiff was in communication with Uber executives about the drunk driving charge against him. Am. Compl. at 6.

Plaintiff filed the original complaint in this matter in D.C. Superior Court on October 23, 2019. *See* Compl., Superior Court Documents [Dkt. # 1-3] at PDF 7. On November 20, 2019, Uber removed the case to this court, *see generally* Notice of Removal of Civil Action [Dkt. #1]. On December 18, 2019, Uber filed the instant motion to compel arbitration, and the matter is fully briefed.[2]

## LEGAL FRAMEWORK

By enacting the Federal Arbitration Act, Congress adopted "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon any grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. However, because arbitration is a matter of contract, parties cannot be compelled to arbitrate their disputes unless they have agreed to do so. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). When one party resists arbitration, the opposing party may

---

2   *See* Pl.'s Response to Motion to Dismiss [Dkt. # 12]; Def.'s Reply Mem. of P. & A. in Supp. of Mot. to Compel [Dkt. # 10] ("Def.'s Reply 1"); Pl.'s Mem. of P. & A. in Opp. to Uber Technologies' Mot. to Compel Arbitration [Dkt. # 19] ("Pl.'s Opp."); Def.'s Reply Mem. of P. & A. in Further Supp. of Mot. to Compel [Dkt. # 20] ("Def.'s Reply 2").

petition any federal district court that would otherwise have subject-matter jurisdiction "for an order directing that such arbitration proceed in the manner provided for in [their written arbitration] agreement." 9 U.S.C. § 4.

The Supreme Court has underscored that the FAA creates a strong presumption favoring the enforcement of arbitration agreements, explaining that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24–25. But "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010).

A motion to compel arbitration is evaluated under the summary judgment standard. *Aliron Int'l, Inc. v. Cherokee Nation Indus.*, 531 F.3d 863, 865 (D.C. Cir. 2008). First, "'the party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made. This burden does not require the moving party to show initially that the agreement would be *enforceable*, merely that one existed.'" *Sakyi v. Estee Lauder Cos.*, 308 F. Supp. 3d 366, 375 (D.D.C. 2018), quoting *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (emphasis in original). "The burden then shifts to [the non-moving party] to raise a genuine issue of material fact as to the making of the agreement, using evidence comparable to that identified in Fed. R. Civ. P. 56." *Hill v. Wackenhut Servs. Int'l*, 865 F. Supp. 2d 84, 89 (D.D.C. 2012) (internal quotation marks and citation omitted). The Court will compel arbitration if "the pleadings and the evidence demonstrate that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Booker v. Robert Half Int'l Inc.*, 315 F. Supp. 2d 94, 99 (D.D.C. 2004), quoting Fed. R. Civ. P. 56(c), *aff'd*, 413 F.3d 77 (D.C. Cir. 2005).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

Plaintiff does not dispute that he signed the November 2014 or December 2015 Agreements that contain the arbitration provisions.  *See* Ex. E to Chan Decl. [Dkt. # 6-2] (showing plaintiff electronically signed the November 2014 and December 2015 Agreements).  So the defendant has met its burden to come forward with evidence showing that an agreement to arbitrate was made, and plaintiff has not identified any dispute of fact with respect to the making of the Agreement.  Instead, he contends that the Court should deny the motion as a matter of law; he argues that section 1 of the FAA exempts Uber drivers from being bound by the Federal Arbitration Act.  Pl.'s Opp. at 1–2.

Section 2 of the FAA provides that:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Supreme Court has held that in this section, the FAA "places arbitration agreements on equal footing with other contracts, and requires courts to enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (internal citation omitted). But section 1 of the FAA, on which plaintiff relies, provides that: "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. This provision is known as the "exclusionary clause." *See Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1470 (D.C. Cir. 1997).

Plaintiff contends that he "is not bound to arbitration by the [FAA]" because Uber drivers are a "class of workers engaged in foreign or interstate commerce" covered by the residual clause of the section 1 exclusion. *See* Pl.'s Opp. at 1–2. He directs the Court to the Third Circuit's opinion in *Singh v. Uber Technologies Inc.*, 939 F.3d 210 (3d Cir. 2019), which he submits "decided that FAA Section 1 does apply to contracts for transporting goods or people." Pl.'s Opp. at 2. It is true that the *Singh* court recognized the possibility that some contracts with transportation workers who transport passengers *could* fall within the exclusion; it held that "the residual clause of § 1 of the FAA *may* operate to exclude from FAA coverage the contracts of employment of all classes of transportation workers, so long as they are engaged in interstate commerce, or in work so closely related thereto as to be in practical effect part of it." *Singh*, 939 F.3d at 226 (emphasis added).[3]

But this Court is required to follow the rulings of the U.S. Court of Appeals for the District of Columbia Circuit. And that court, along with the majority of other circuit courts, has decided

---

3   The Court then remanded the case to the to the district court for a factual determination of whether the residual clause applies to Uber drivers in particular. *Id*. at 226–28.

that that "section 1 of the FAA does not exclude all contracts of employment that affect commerce[;]" it "only excludes from the provisions of the Act the employment contracts of workers engaged in the transportation of *goods* in commerce." *Cole,* 105 F.3d at 1470, 1472 (emphasis added); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001) (acknowledging the circuit split but noting that "[m]ost Courts of Appeals conclude the exclusion provision is limited to transportation workers, defined, for instance, as those workers 'actually engaged in the movement of goods in interstate commerce'"), quoting *Cole*, 105 F.3d at 1471.

Plaintiff points out that he was not engaged exclusively in the transportation of people; he also occasionally transported restaurant meals through the Uber platform known as Uber Eats. Pl's Opp. at 1–2.[4] And, he notes, if you drive for Uber in the Washington, D.C. metropolitan area, you may – and he did – end up crossing state lines into Virginia or Maryland. *See id.* at 2. But the Court need not decide the question of whether that occasional geographic necessity would qualify as involvement in interstate commerce,[5] or whether plaintiff was ever engaged in the interstate transportation of goods as a factual matter because section 1 excludes "*contracts of employment*

---

[4] "Although Courts [outside the Third Circuit] are trending towards a [] belief that the FAA extends to transporting people, [section 1] of [the] FAA still includes the Plaintiff because he transported people (UberX) and goods (UberEats) across three state lines in the DMV."

[5] Even the *Singh* court was not persuaded that/had its doubts about whether the mere fact that an Uber driver might cross state lines would be dispositive. *See Singh*, 939 F.3d at 227–28 (rejecting both parties' argument that the contract (argued by plaintiff) or the actual type of work performed by Uber drivers (argued by Uber) were determinative of whether Uber drivers engaged in interstate commerce, and remanding the issue because "[t]his inquiry can be informed by various factors," including "the parties' agreement(s), information regarding the industry in which the class of workers is engaged, information regarding the work performed by those workers, and various texts – *i.e.*, other laws, dictionaries, and documents – that discuss the parties and the work.").

of . . . workers engaged in foreign or interstate commerce," 9 U.S.C. § 1, and the contract at issue in this motion to compel arbitration is the contract involving the transportation of passengers using the Uber app, not whatever document plaintiff may have executed in connection with Uber Eats.

For these reasons, the Court finds that there is no dispute of material fact concerning the existence of an agreement to arbitrate the dispute at the heart of the complaint, and the motion to compel arbitration will be granted.

## CONCLUSION

For the foregoing reasons, Uber's motion to compel the arbitration of all but the sexual harassment claims is **GRANTED**.  The parties must inform the Court by October 1, 2020, of their positions on the question of whether, in light of this ruling, the claims subject to arbitration should be dismissed without prejudice or stayed.

**SO ORDERED**.

/s/ Amy B. Jackson
AMY BERMAN JACKSON
United States District Judge

DATE: September 17, 2020