UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| SAMUEL TYLER, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) Civil Action No. 19-3492 (ABJ) |
|  | ) |
| UBER TECHNOLOGIES, INC., *et al.*, | ) |
|  | ) |
| Defendants. | ) |

**ORDER**

On October 23, 2019, *pro se* plaintiff Samuel Tyler brought this action in the Superior Court of the District of Columbia, arising out of his use of Uber Technologies, Inc.'s ("Uber") smartphone application to drive passengers for hire. Notice of Removal of Civil Action [Dkt. # 1] ("Notice of Removal"). He filed this action against Uber and a passenger he refers to as "Rider Grayson." *See generally* Am. Compl. [Dkt. # 9].[1] Plaintiff, who was connected as a driver for Grayson through Uber on June 3, 2018, alleges that Grayson engaged in "sexually suggestive behavior" toward him during the ride. Am. Compl. at 14. Plaintiff claims that he minimized his interaction with Grayson, who, following the ride, filed a complaint with Uber alleging that plaintiff had been driving while intoxicated. Am. Compl. at 5, 14. Based on these circumstances, plaintiff claims that he was a victim of sexual harassment. Am. Compl. at 5; Ex. A to Mot. to Dismiss [Dkt. # 13-2] ("EEOC Compl.") ¶ 4. He also alleges that Uber's subsequent termination of his Uber account on the grounds that he was driving while intoxicated was unlawful because

---

1  Although Grayson is included as a co-defendant, it does not appear that this individual has ever been identified by his full name or served as required under Federal Rules of Civil Procedure 4(c) and (m).

Uber failed to provide a safe working environment free from sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and D.C. Code § 50-301.29a; that Uber discriminated against plaintiff on the basis of his status as a recovering alcoholic in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12111–12117; and that Uber violated the requirements of D.C. Code § 50-301.29a – which governs the investigation of allegations of impropriety in for-hire vehicles – when it terminated plaintiff's contract based on an inadequate investigation.  Am. Compl. at 7.

On November 20, 2019, Uber removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1332(a)(1), 1367, 1441, and 1446.  *See* Notice of Removal at 1, 6.  On December 18, 2019, Uber moved for an order compelling arbitration of plaintiff's complaint, with the exception of his sexual harassment claims, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3, 4.  Uber's Mot. to Compel Arbitration of Pl.'s Compl., With The Exception of His Sexual Harassment Claims [Dkt. # 6] ("Mot. to Compel") at 1.  The following month, on January 14, 2020, Uber filed a motion to dismiss the remaining sexual harassment claims.  Uber's Mot. to Dismiss Pl.'s Sexual Harassment Claims [Dkt. # 13].  On September 17, 2020, the Court granted Uber's motion to dismiss plaintiff's sexual harassment claim under Title VII because plaintiff's pleadings failed to "plausibly allege that plaintiff is an employee of the defendant as opposed to an independent contractor," and under D.C. Code § 50-301.29a because "that provision does not give rise to a private cause of action."  Mem. Op. at 2–3 [Dkt. # 26]; Order [Dkt. # 25].

The Court also granted Uber's motion to compel arbitration of the remaining claims, finding that because "plaintiff is bound by the arbitration provisions in the Agreements," "all of his claims, with the exception of the sexual harassment claim and the D.C. Code claim . . . must be submitted to arbitration for resolution."  Mem. Op. and Order [Dkt. # 27] at 2 (granted on

Sept. 17, 2020); *see* Software License and Online Servs. Agreement, Ex. C to Decl. of Michael Chan, Mot. to Compel [Dkt. # 6-2] ("Nov. 2014 Agreement") ¶ 15.3(vii) ("A court of competent jurisdiction shall have the authority to enter a judgment upon the award made pursuant to the arbitration."); Technology Servs. Agreement, Ex. D. to Decl. of Michael Chan, Mot. to Compel [Dkt. # 6-2] ("Dec. 2015 Agreement") ¶ 15.3(vii) (same).

The Court ordered a stay in the proceedings for the remaining counts pending the outcome of the arbitration. Min. Order (Sept. 30, 2020); *see* 9 U.S.C. § 3 ("[T]he court in which such suit is pending . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .").

On August 3, 2021, Linda Singer, Esq., the Arbitrator, issued a final order dismissing plaintiff's claims in their entirety, with prejudice. Final Order Dismissing Demand for Arbitration with Prejudice, Def. Uber's Status Rep. [Dkt. #38-1] ("Final Order") at 8. The order was served on all parties on August 4, 2021. *Id.* at 9.

Pending before the Court is Uber's motion to confirm the arbitration award and dismiss plaintiff's claims with prejudice. Def. Uber's Mot. to Dismiss Pl.'s Claims with Prejudice and Confirm Arbitration Award [Dkt. # 41] ("Mot."). Plaintiff has opposed the motion, and filed a cross-motion to request that "the arbitration award be vacated, and that the case be remanded back to arbitration." Pl.'s Mot. to Vacate Award and Remand to Arbitration [Dkt. # 47] ("Opp. & Cross-Mot.") at 1; Pl.'s Resp. to Uber's Resp. to Pl.'s Status Rep. [Dkt. # 48] ("Resp. in Supp. of Opp.

& Cross-Mot."). The motions are fully briefed.[2] Def. Uber's Reply in Supp. of Mot. [Dkt. # 49]; *see also* Uber's Resp. to Pl.'s Status Rep. [Dkt. # 40].

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon *the court must grant such an order* unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. . . . Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding.

9 U.S.C. § 9; *see also Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 587 (2008) ("There is nothing malleable about 'must grant,' which unequivocally tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applies.").

Because the arbitration hearing took place in Washington, D.C., and this Court is one of "competent jurisdiction," Nov. 2014 Agreement ¶ 15.3(vii); Dec. 2015 Agreement ¶ 15.3(vii),

---

2   The Court ordered plaintiff to file his opposition to the motion to dismiss by October 6, 2021. Order (Sept. 8, 2021) [Dkt. # 42]. Instead of filing an opposition, plaintiff filed a motion for a hearing. Mot. for Oral Hr'g [Dkt. # 43]. The Court denied this motion, and again ordered plaintiff to respond to defendant's motion to dismiss by a new deadline of December 17, 2021. Min. Order (Nov. 9, 2021). On December 17, 2021, the Clerk for the U.S. District & Bankruptcy Courts for the District of Columbia received two submissions from plaintiff titled, "Plaintiff's Motion to Vacate Award and Remand to Arbitration," Opp. & Cross-Mot. at 1, and "Plaintiff's Response to Uber Technologies Inc.'s Response to Plaintiff's Status Report." Resp. in Supp. of Opp. & Cross-Mot. Because the plaintiff is proceeding *pro se* and disputes the merits of defendant's motion in both filings, the Court deems these submissions, together, to be a timely response to defendant's motion, as well as a cross-motion to remand the matter to arbitration. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed.'"), quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Court will also consider plaintiff's assertions on the disputed issues that he submitted in a status report to the Court on August 19, 2021, before the motion to dismiss was filed. Status Rep. [Dkt. # 39] ("Aug. 19, 2021 Status Rep.").

4

"[p]laintiff's application for confirmation of the award to this Court is thus proper." *Owen-Williams v. BB & T Inv. Servs., Inc.*, 717 F. Supp. 2d 1, 21 (D.D.C. 2010).

As the Court of Appeals for the D.C. Circuit has "repeatedly recognized, judicial review of arbitral awards is extremely limited." *Kurke v. Oscar Gruss & Son, Inc.*, 454 F.3d 350, 354 (D.C. Cir. 2006) (internal quotation marks omitted). Under the FAA, 9 U.S.C. § 10, there are only four grounds upon which an arbitration award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

Additionally, "arbitration awards can be vacated if they are in manifest disregard of the law." *Kurke*, 454 F.3d at 354 (internal quotation marks and alterations omitted). This is an "extremely narrow standard of review." *Id.*

Defendant argues that "because Arbitrator Singer dismissed [p]laintiff's claims with prejudice during the arbitration proceeding, this Court may properly dismiss Plaintiff's remaining claims here." Mot. ¶ 6. Plaintiff maintains, though, that "a pattern of behavior from Uber counsel . . . destabilized the arbitration, and the Arbitrator that was evidence of partiality under FAA 9 U.S. CODE § 10." Opp. & Cross-Mot. ¶ 6. Plaintiff lists the following to support his contention:

5

- "The [A]rbitrator in this case did not" "take[] a step back to see how [race] was adversely impacting the proceeding." Resp. in Supp. of Opp. & Cross-Mot. ¶ 8.[3]

- The Arbitrator did not review a "July 19, 2021 . . . formal oral argument . . . [which] described the racism and attempted to answer any questions the [A]rbitrator had during the oral argument." *Id.* ¶ 8; *see* Letter from Sam Tyler to Linda Singer (July 19, 2021), Ex. A to Status Rep. [Dkt. # 39] ("Closing Argument"). "Even where the [A]rbitrator was given the chance to guide the proceeding in one direction or another in reviewing the [racism] allegation, it failed." Resp. in Supp. of Opp. & Cross-Mot. ¶ 17.[4]

- "[T]he [A]rbitrator presided over a proceeding that was demonstrably racist and further destabilized by the unchecked, unprofessional antics of Uber counsel inside and outside of the proceedings." *Id.* ¶ 8.

- "The Arbitrator had or was involved with nine [to eleven] different cases involving Uber Technologies and or Littler."[5] *Id.* ¶ 8. Further, the Arbitrator had a "declared economic interest in the overall financial success of [the Judicial Arbitration &

---

3   In a status report, plaintiff informed the Court that he was concerned going into the arbitration that he "was a black male accused by a white male . . . and who was defended by a team of white attorneys before . . . a white arbitrator." Aug. 19, 2021 Status Rep. at 2.

4   Plaintiff informed the Court that Uber's counsel had argued to the Arbitrator that plaintiff had "beef" with Uber. Aug. 19, 2021 Status Rep. at 3–5. Plaintiff writes "[t]hat word 'beef' is street slang that emerged with the birth of hip hop culture in the South Bronx to describe aggression and conflict," Closing Argument at 2, and notes that counsel "would not have referred to [him] in that way, but for the fact that [he is] a black male." Aug. 19, 2021 Status Rep. at 5. He adds that counsel's "racist 'beef' comment contributed to a pattern of mocking and intimidation that Uber has practiced throughout this case." *Id.* at 6.

Plaintiff also recounted that Uber's counsel had "mocked [his] dyslexia by inserting comma faults into his salutations," and called him by his first name even though they "have never been on a first name basis." *Id.*; *see also* Resp. in Supp. of Opp. & Cross-Mot. ¶ 27.

5   "Littler" presumably refers to the law firm Littler Mendelson, P.C., which represents defendant Uber in this action. *See* Mot. at 3.

6

- Mediation Services or 'JAMS'],"[6] and represented "the approximate 25% minority of JAMS neutrals with an ownership share in the company." *Id.* ¶ 8 (internal quotation marks omitted).

- That "it appears as if Uber counsel and the [A]rbitrator are stepping over each other to win Uber's approval." *Id.* ¶ 15.

- "Substantial parts of the [A]rbitrator's decision are . . . troubling," including the Arbitrator's statement that "Claimant has no information about the steps Uber took to investigate," her discussion of collateral estoppel, and her analysis of the confidentiality provision in the Technology Services Agreement. Aug. 19, 2021 Status Rep. at 5 (emphasis omitted); *see* Resp. in Supp. of Opp. & Cross-Mot. ¶¶ 22–23.

According to plaintiff, these circumstances "demonstrate[] the direct and definite bias that would lead a reasonable person to conclude that the Arbitrator was biased." Resp. in Supp. of Opp. & Cross-Mot. ¶ 11 (internal quotation marks and alterations omitted).

---

6   The agreement between the parties provides:

> The Arbitrator shall be selected by mutual agreement of the Company and you. Unless you and the Company mutually agree otherwise, the Arbitrator shall be an attorney licensed to practice in the location where the arbitration proceeding will be conducted or a retired federal or state judicial officer who presided in the jurisdiction where the arbitration will be conducted. If the Parties cannot agree on an Arbitrator, then an arbitrator will be selected using the alternate strike method from a list of five (5) neutral arbitrators provided by JAMS (Judicial Arbitration & Mediation Services).

Nov. 2014 Agreement ¶ 15.3(iii); Dec. 2015 Agreement ¶ 15.3(iii) (same). On January 30, 2021, the Court ordered the defendant to "transmit to the plaintiff a list of 5 individuals provided by JAMS," after which "the parties, beginning with the plaintiff, will have the option to strike a proposed arbitrator until one name remains." Min. Order (Jan. 30, 2021). The Court specified that "[t]his process must be completed by February 28, 2021." *Id.* On March 2, 2021, the parties filed a joint status report informing the Court that "[o]n February 18, 2021, [p]laintiff filed a revised demand for arbitration with JAMS." Joint Status Rep. [Dkt. # 35] ¶ 3. The parties filed another joint status report on May 3, 2021, reporting that "[o]n March 4, 2021, JAMS appointed Linda Singer, Esq. as the Arbitrator to adjudicate Plaintiff's claims," after both Uber and plaintiff returned their strike lists. Joint Status Rep. [Dkt. # 36] ¶¶ 3–5.

"It is well established that a mere appearance of bias is insufficient to demonstrate evident partiality." *Owen-Williams*, 717 F. Supp. 2d at 19 (internal quotation marks omitted).  Rather, "[t]he alleged partiality must be direct, definite, and capable of demonstration rather than remote, uncertain, or speculative." *Al-Harbi v. Citibank, N.A.*, 85 F.3d 680, 683 (D.C. Cir. 1996) (internal quotation marks omitted).  "[T]he burden on a claimant for vacation of an arbitration award due to evident partiality is heavy, and the claimant must establish specific facts that indicate improper motives on the part of an arbitrator." *Id.* (internal quotation marks omitted).  Here, plaintiff has not provided any citations to the record of the proceeding to support his argument that his race "adversely impact[ed]" the Arbitrator or her reasoned analysis.  Resp. in Supp. of Opp. & Cross-Mot. ¶ 8; *see id.* ¶ 9; *see also* Final Order.  Plaintiff, therefore, cannot have met his "heavy" burden to establish facts that indicate the Arbitrator had improper racially-based motives.  *Al-Harbi*, 85 F.3d at 683.  Indeed, it does not appear that plaintiff is arguing that the Arbitrator herself was improperly motivated by race; rather, his argument is that the improper racially-based bias came

from Uber's counsel.[7]  To the extent that plaintiff is attempting to argue that the Arbitrator was biased, evidenced by her exclusion of the July 19, 2021 "formal oral argument" from plaintiff, *see* Closing Argument, this contention also fails.  The Arbitrator specifically referenced this document in the Final Order.  *See* Final Order at 4 ("Claimant filed an additional document on July 19, to which there was no need for Uber to respond.").  But even if she did not specifically refer to plaintiff's submission, arbitrators have "substantial leeway" as to what evidence to admit and consider, *ARMA, S.R.O.*, 961 F. Supp. 2d at 263, and plaintiff has not shown that evidence about

---

7       Plaintiff has also not provided any facts to show that Uber counsel's actions impacted the proceeding in a way that secured the award through "corruption, fraud, or undue means." 9 U.S.C. § 10(a).  "Unsupported, hearsay statements" are insufficient to make this showing. *Owen-Williams*, 717 F. Supp. 2d at *17 n.8 ("[T]o the extent [p]laintiff's statements consist solely of unsupported, hearsay statements, such statements are clearly insufficient to support his motion for an order vacating the arbitration award in this case.").  Plaintiff "must demonstrate by clear and convincing evidence that its opponent actually . . . used undue means during the course of the arbitration." *ARMA, S.R.O. v. BAE Sys. Overseas, Inc.*, 961 F. Supp. 2d 245, 254 (D.D.C. 2013). There is a "high bar" to show "undue means," which requires "nefarious intent or bad faith" or "conduct that is immoral, if not illegal." *Id.* (internal quotation marks omitted); *see Washington v. William Morris Endeavor Ent., LLC*, No. 10-CV-9647 PKC, 2014 WL 4401291, at *11 (S.D.N.Y. Sept. 5, 2014) (confirming arbitration award because even if plaintiff's claims that defendant's counsel behaved as "kings of deception" and "masterful manipulators" were true, the arbitrator provided two separate bases for dismissing plaintiff's claims).

Here, although plaintiff argues that Uber's counsel was "demonstrably racist," Resp. in Supp. of Opp. & Cross-Mot. ¶ 8, the only record citation he provides to support his contention is that Uber's counsel told the Arbitrator that plaintiff had "beef" with Uber.  Aug. 19, 2021 Status Rep. at 3–5.  This does not amount to clear evidence of bias.  Uber's counsel explained this comment in a letter to the Arbitrator:  counsel "did not use the term 'beef' with the connotation that [plaintiff] describes."  Letter from Ethan D. Balsam, Littler Mendelson, PC, to Linda Singer, Arbitrator (July 20, 2021), Ex. B to Status Rep. [Dkt. # 39].  In the Court's view, the term "beef" is synonymous with the term "grievance," and does not have racial overtones, notwithstanding plaintiff's understanding of its derivation.  *See* Oxford English Dictionary (online ed. Sept. 21, 2022) (definition 4: "A protest, (ground for) complaint, grievance"); Merriam-Webster Dictionary (online ed. Sept. 21, 2022) (definition 4: "complaint").

Moreover, the Arbitrator provided numerous bases to dismiss plaintiff's claims, all of which are outlined in detail in the Final Order.  *See* Final Order.

the "beef" comment – which was the subject of the July 19, 2021 letter – was pertinent or material to the controversy.

To the extent that plaintiff is arguing the Arbitrator was improperly motivated because of her financial interests in JAMS, Uber, or Uber's law firm, this argument also fails. Plaintiff, again, has pointed to no facts indicating improper motives on the part of the Arbitrator. And in fact, the Arbitrator disclosed to plaintiff on March 4, 2021 – before the arbitration proceedings began – that she was "serving or within [the] preceding 5 years ha[d] served . . . [a]s a neutral arbitrator in another arbitration involving a party, lawyer for a party, or law firm for a party to the current arbitration," and "[a]s a dispute resolution neutral other than an arbitrator in another pending or prior case involving a party, lawyer for a party, or law firm in the current arbitration." Disclosure Checklist for All Arbitrations, Ex. B to Resp. in Supp. of Opp. & Cross-Mot. [Dkt. # 48] at 1; *see* Final Order at 3 (preliminary conference was held on April 20, 2021); *see also Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 149 (1968) ("We can perceive no way in which the effectiveness of the arbitration process will be hampered by the simple requirement that arbitrators disclose to the parties any dealings that might create an impression of possible bias."). She explained:

> In the past 5 years I have arbitrated one case in which other lawyers from Littler have represented the Respondent. The case settled before a hearing. I was also appointed as an arbitrator to another case in which other lawyers from Littler represented the Respondent, but this matter was consolidated with another matter and assigned to a different arbitrator.

Disclosure Checklist for All Arbitrations at 2. And:

> In the past 5 years I have mediated 5 cases in which other lawyers from Littler have represented a party. I have not worked with the lawyers involved in the current case. I am currently serving as a mediator for a case in which other lawyers from Littler are representing a party. I previously served as a mediator in a case involving Uber.

*Id.* The Arbitrator also disclosed that she was "an owner panelist of JAMS." *Id.*

Plaintiff has not shown that the partiality he alleges the Arbitrator showed to Uber is anything other than speculative, particularly since the Arbitrator disclosed at the forefront any involvement that could create any possible impression of bias. Throughout the arbitration proceedings, plaintiff never challenged the Arbitrator's service based on her disclosures, although he could have done so at any time. *See* Rule 12(j), JAMS Streamlined Arbitration Rules & Procedures (available at https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-12) ("At any time during the Arbitration process, a Party may challenge the continued service of an Arbitrator for cause.").

Lastly, plaintiff's argument that the Arbitrator's decision was substantively "troubling," Aug. 19, 2021 Status Rep. at 5; *see* Resp. in Supp. of Opp. & Cross-Mot. ¶¶ 22–23, also fails. The decision explains that: plaintiff failed to show that Uber did not fulfill its obligations under the confidentiality provisions of the Technology Services Agreement, Final Order at 5; plaintiff "failed to allege any way in which Uber breached the Agreement's privacy provision," *id.*; plaintiff failed "to show how he suffered damages from any actions by Uber relating to the confidentiality of the privacy provision," *id.* at 6; and "nothing in the Agreement . . . requires any sort of investigation prior to Uber's terminating" a relationship with a driver. *Id.* at 7. Nothing about the Final Order is "troubling," and indeed plaintiff admits that the Arbitrator "referenced pertinent, plain language parts of the Uber Agreement" in her decision. Resp. in Supp. of Opp. & Cross-Mot. ¶ 20. Although plaintiff argues that the Arbitrator failed to consider and analyze other important information, this Court may not reconsider the merits of her award or reasoning, which spans more than seven pages. *See* Final Order; *Kurke*, 454 F.3d at 354–55 ("[W]hen the arbitrators give no explanation for their decision, . . . we must confirm the award if any justification can be gleaned

from the record. Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.") (internal quotation marks and citations omitted).

Therefore, plaintiff's request for vacatur on the ground that the Arbitrator did not appropriately analyze the evidence in his case also fails.

The Court recognizes that the plaintiff has been deeply troubled by his treatment at the hands of Uber and that he continues to chafe at the unfairness he believes he experienced. But the matter was referred to a very experienced mediator and arbitrator, and there is no indication that she did not take his case seriously or that her consideration of the claims was tainted by racial animus or bias of any kind. The mere fact that the plaintiff was the only Black person in the room is not enough to substantiate his claims. Moreover, the fact that plaintiff may have been offended by the tone of certain communications by Uber's lawyers does not indicate that the proceedings themselves were so deficient that the Court has the authority to overturn the result. The Court hopes, though, that the lawyers will keep the potential sensitivity of opposing parties, especially those proceeding *pro se*, in mind in the future.

Because plaintiff has not shown that there are any grounds upon which the arbitration award should be vacated under the FAA, *see* 9 U.S.C. § 10(a), that would justify the Court's "extremely limited" judicial review of arbitration decisions, *Kurke*, 454 F.3d at 354, his motion to vacate the arbitration award and remand the case to arbitration is **DENIED**. Defendant's motion to confirm the arbitration award and dismiss plaintiff's claims with prejudice is **GRANTED**.

Additionally, plaintiff is hereby **ORDERED** to show cause by October 24, 2022 as to why the claims against Rider Grayson should not be dismissed for failure to serve this defendant.

**SO ORDERED**.

*Amy B Jackson*
AMY BERMAN JACKSON
United States District Judge

DATE:  September 24, 2022